# Richmond.

Adams v. Cumby.

January 12, 1911.

Absent, Cardwell, J.

1.  Boundaries—*Case at Bar.*—The evidence in the case at bar wholly fails to sustain the verdict found for the plaintiff in the trial court. If the contention of the plaintiff as to the boundary between her lot and that of the defendant were to be established it would not only be wholly contradictory of the maps of the block in which the lot in controversy is situated, extend the plaintiff's rear line from 67 to 78 feet, and change the configuration of lot 1 in that block from a pentagon to a parallelogram, but, by the same system of reasoning and proof, would disturb the boundary lines of every lot in that block. The vice in the plaintiff's evidence is in assuming the wrong starting point from which to make measurements. Upon the evidence, the verdict should have been for the defendant, and not for the plaintiff.

Error to a judgment of the Corporation Court of the city of Lynchburg, in an action of ejectment. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*F. S. Kirkpatrick* and *A. S. Hester*, for the plaintiff in error.

*Wm. M. Murrell*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

This was an action of ejectment brought by Mrs. Cumby against Mrs. Adams to recover possession of a parcel of land known as lot No. 3 in section "J" of the lands of the Park Avenue Addition, lying in the city of Lynchburg, and bounded as follows: Fronting on Grady avenue twenty-five feet and running back between parallel lines one hundred and twenty-five feet to the line of lot number 59 of the said section J of the lands of the said Park Avenue Addition, as appears from a plat of said Park Avenue Addition of record in the clerk's office of the county of Campbell.

Upon the trial the jury gave the plaintiff a verdict in the following words: "We, the jury, find for the plaintiff, Mary Ida Cumby, an estate in fee simple in thirteen feet six inches of lot No. 3 in block J, Park Avenue Addition, adjoining lot No. 4, in block J, in said Park Avenue Addition, a part of the land in the declaration mentioned, the line of said lot No. 3 next to lot No. 4 in said block J being sixty-four feet and six inches from the corner of Blackford avenue and Grady avenue in said Park Avenue Addition." Upon the verdict a judgment was rendered, and the case is before us for review upon a writ of error sued out by Mrs. Adams.

Mrs. Cumby claims title under a deed dated the 25th of January, 1906, made by Mrs. Hughes and her husband, which conveys lots 1, 2 and 3, and a portion of lot 59, section "J," Park avenue, as shown by a plat of record in Campbell county clerk's office, deed book 54, page 175. At this point in the deed there is inserted a diagram of the land conveyed, as follows:

This diagram, however, is not otherwise referred to in the deed, which proceeds as follows: "The said parties of the first part covenant that they have the right to convey the said land to the grantee; that they have done no act to encumber the same; that the grantee shall have quiet and peaceable possession of said land, free from all encumbrances, and that they, the parties of the first part will execute such other and further assurance of said land as may be requisite. Witness the following signatures and seals. (Signed) A. B. W. Hughes; B. E. Hughes," with their seals, and duly acknowledged and admitted to record.

Section "J" of Park Avenue Addition, referred to in the declaration, in the judgment and in the deed just quoted, is bounded on the south by Blackford avenue, on the east by Grady avenue, on the north by Cleveland avenue, and on the west by Watts avenue. It is not intended to state with ac-

curacy the direction in which these streets run, but only to approximate their true direction.

The only question which we need consider is whether the verdict is supported by the evidence. The case of the plaintiff depends upon the testimony of Herbert G. Garland and J. R. Hutter.

Garland testifies that he made a survey of the lots of the plaintiff purchased of Mrs. Hughes, from which it appeared that the house of the defendant is on lot 3, one of the lots purchased of Mrs. Hughes, some 13.5 feet; that he had made a map of the plaintiff's lots showing how much of lot 3 is occupied as lot 4, and in making this survey he commenced at a corner stone in block "J" where Grady and Cleveland avenues intersect, and then running up or out Grady avenue to Blackford avenue, the end of block "J," to a corner stone, and after giving all of the lots the number of feet frontage on Grady avenue called for in the map of Park Avenue Land Company, which is recorded in the clerk's office of Campbell county and which is the same map referred to in the deed from A. B. W. Hughes and husband to Mrs. Mary Ida Cumby, there was 14.5 feet to this lot, and by doing this the owner of lot 4 is over on lot 3, 13.5 feet; that he did not know whether the stone in block "J" at the intersection of Grady and Cleveland avenues was located according to the map as recorded or not; that he knew that the corner stone in block 1, at the intersection of Grady and Cleveland avenues, is not at the point fixed by the map, as there has been another lot of 25 feet put in since the map was made and Cleveland avenue shifted north 25 feet from where it is shown to be on this map; that his survey was made on the presumption that the corner stone in block "J" at the intersection of Grady and Cleveland avenues is at the point shown by the map, and if Cleveland avenue at this point

has been shifted north since the making of the map, lot 1 would not have the 14.5 feet frontage on Grady avenue, as the scalage of the map would not give anything like that much, but he could not say how much as he had not scaled the map to find out; that scaling a map is not an accurate method of getting at the length of a disputed line, especially from a blue print, but the occupier of lot 4 would not have any part of lot 3 in possession on the scaling of lots 1, 2 and 3 as shown by the map, and to give lot 1 sixty-seven feet in the rear line would coincide with the scalage and courses of the map, and to give lot 1 fourteen and five-tenths feet frontage on Grady avenue would change the scalage and courses of the line; that instead of lot 2 having five sides, as shown on the map, it would only have four, and instead of the whole rear line of lot 1 paralleling Watts avenue, as shown by the map, a portion of this rear line would parallel with Grady avenue instead of Watts avenue; and that the rear line of lot 1 is given as 67 feet in the copies of the map made by his father, M. H. Garland, and the copy in his possession shows this line to be 67 feet instead of 78 feet, the necessary length of this line to give 14.5 feet on the front line of Grady avenue.

In order the better to understand Garland's testimony, it may be well to state, that it appears from the map of the Park Avenue Addition of record in Campbell county clerk's office, that section "J" begins at Blackford avenue, as its southern boundary, and contains lots numbered from 1 to 36, inclusive, Nos. 1, 2 and 3 were conveyed by Mrs. Hughes and her husband to Mrs. Cumby, and in order to ascertain the true boundary of her purchase the witness Garland went to the intersection of Cleveland and Grady avenues, which come together so as reduce the most northerly point of section "J" of the Park Avenue Addition to an acute angle. It is obvious that the probative force of Garland's testimony depends upon the ac-

curacy with which he has established his starting point, which is the stone in block "J" at the intersection of Grady and Cleveland avenues. He says he does not know whether the stone in block "J" at the intersection of Grady and Cleveland avenues was located according to the map as recorded or not; that he knows that the corner stone in block "I" at the intersection of Grady and Cleveland avenues is not at the point fixed by the map, as there has been another lot of 25 feet put in since the map was made, and Cleveland avenue shifted north 25 feet from where it is shown to be on the map; that his survey was made on the presumption that the corner stone in block "J" at the intersection of Grady and Cleveland avenues is at the point shown by the map, and if Cleveland avenue has been shifted north since the making of the map, lot 1 would not have the 14.5 feet frontage on Grady avenue, as the scalage of the map would not give anything like that much, but he could not say how much, as he had not scaled the map to find out. It further appears from his evidence that lot No. 2, which is shown on the map to have five sides, the westerly line being a broken line, would, if his survey be correct, be reduced to a regular parallelogram of four sides, and the rear line of lot 1, which is given as 67 feet on the map made by M. H. Garland (being the recorded map of the addition above referred to), would be extended to 78 feet, which as the witness says is "the necessary length of this line to give 14.5 feet on the front line of Grady avenue." All of which, it may be added, is necessary to sustain the verdict of the jury.

The evidence of Hutter, the other witness for the plaintiff, merely shows that he has surveyed the plaintiff's lot for her since her purchase, and according to his survey the house on lot 4 is in part on lot 3, that is the occupier of lot 4 is over on lot three 13.3 feet fronting on Grady avenue, and in making this survey he commenced at the corner stone in block

"J" where Grady and Cleveland avenues intersect, and then running up or out Grady avenue to the end of block "J" to a corner stone where Grady and Blackford avenues intersect; and after giving the lot owners of all the lots in block "J" up to lot 1 on Grady avenue as called for by the map recorded in the clerk's office of Campbell county court, there was 14.3 feet over, and as lot 1 was an unlettered lot, that is, the feet frontage on Grady avenue was not given, he gave the 14.3 feet to it; that in making this survey he has assumed that the corner stone in block "J" at the intersection of Grady and Cleveland avenues was located at the point indicated by the map; that he did not know anything about its being located or set up; and that it may have been changed or put at a different point to the one called for by the map, so far as he knew; that he had scaled lot 1 on the map, and according to this scaling lot 1 would have some two feet on Grady avenue, and that the occupier of lot 4 would not be on any part of lot 3, according to the scaling of the map, and to give 14.3 feet frontage on Grady avenue to lot 1 would make the rear line of lot 1 some 78 feet, and the map shows by scaling it to be some 67 feet, and to give more than 67 feet to this rear line or two feet to the front on Grady avenue would change the conditions as appear on the face of the map, that is, 67 feet on rear line and two feet on Grady avenue coincide with the map, and to give 14.3 feet on Grady avenue and 78 feet on the rear line to lot 1 would change the rear line to lot 2, in that it would be changed from a lot of five sides to one of four, and the whole rear line would parallel Grady avenue, whereas a portion of this line parallels Watts avenue, and the rear line to lot 1 would be changed so as to make a portion parallel Grady avenue, whereas the map shows the whole to parallel Watts avenue.

Exactly the same vice inheres in the testimony of this wit-

ness as in that of Herbert G. Garland, in that they both assume their starting point.

Mr. Cumby, the husband of the plaintiff, also testifies in her behalf, but it is not necessary further to discuss his testimony than to say that it is a narrative of what he was told by M. H. Garland, the city surveyor of Lynchburg, who showed to him the lines of lots 1, 2 and 3, and the frontage on Grady avenue.

The witnesses for the defendant satisfactorily explain the whole situation. Mr. Hughes, the husband of Mrs. A. B. W. Hughes, who conveyed the property in question to Mrs. Cumby, testifies that he was secretary and treasurer of the Park Avenue Land and Improvement Company; that its land was surveyed and platted by M. H. Garland, under his observation and supervision; and that the survey and map were recorded in the clerk's office of Campbell county some time prior to the setting of the corner stones; that when the corner stones were being set on the different blocks it was reported by M. H. Garland that Cleveland avenue would not connect with the street in front of the little church on the cotton mill property east of Grady avenue by some 25 feet or more; that the witness went out to the place and had another lot made or added to block "I," extending Cleveland avenue 25 feet farther north than the map called for, and block "J" should have been shifted on the west side of Grady avenue; that Cleveland avenue should have been shifted north to correspond with the shifting on block "I;" that he could not say whether the stone was set or not at the place called for on the map in block "J" or some little distance farther north, but it should have been a little farther north; that the map in the land company's office showed lot 1 to have 67 feet in the rear and running parallel with Watts avenue, and he, as agent for Mrs. A. B. W. Hughes, purchased lot 1 as 67 feet in the rear with a line at right angles to Grady avenue to in-

tersect the said rear line; that he sold the property to Mrs. Cumby as 67 feet in the rear and no other than called for in these lines, and as having no frontage other than above mentioned, the other two lots, 2 and 3, as having 25 feet each on Grady avenue and 25 feet each on the rear line, and lot 59 to run as far back as 117 feet; that he drew the plat in the deed of Mrs. A. B. W. Hughes and himself to Ida Cumby, and stated to the agent of Ida Cumby at the time that that represented the lots that were being sold, as the land company had only sold to Mrs. A. B. W. Hughes 67 feet in the rear line of lot 1 and 25 feet frontage in lot 2 and 3, and that he was only selling the lots as purchased by Mrs. A. B. W. Hughes and as indicated by the map drawn in this deed; that when C. A. Dowdy got ready to build on lot 4 purchased from Mrs. A. B. W. Hughes he had M. H. Garland to go out there and lay off the lot and locate the place to build, and the house on lot 4 is at the place indicated or located by M. H. Garland; that M. H. Garland amended the map and added another lot in block "I," and that all the maps except the one at Rustburg show lot 1 to have 67 feet in the rear, in accordance with the one drawn by the witness in deed conveying the land to Cumby.

C. L. DeMott also testified for the defendant, that he was a civil engineer and had had practical experience for some twenty years. and as such he surveyed lots 1, 2 and 3 in block "J;" that he began at a stone or monument at the intersection of Grady avenue and Blackford avenue on block "J," and running with Blackford avenue 118 feet, thence running parallel with Watts avenue 67 feet, thence a perpendicular line to Grady avenue, giving lot 1, 3.63 feet on Grady avenue; that he platted lots 1, 2, 3, 4, 5 and 6 of block " J," and in making this survey he took the map as recorded in the clerk's office and the one introduced by the plaintiff of the Park Avenue Land Company as recorded in the clerk's office of Campbell

county; that in scaling the map he found that lot 1 contained 67 feet and fronted on Grady avenue 3.63 feet; and that also a map found in the office of the Park Avenue Land Company gave it 67 feet, and the map so found was a copy of the one recorded in the clerk's office; that the plat or map in the deed from A. B. W. Hughes to Mrs. Cumby showed lot 1 to be 67 feet in the rear, and from his survey the house of Mrs. Adams, or the occupier of lot 4, was not upon any part of lot 3, as claimed by H. G. Garland and J. R. Hutter; that to give lot 1 14.3 or 14.5 feet frontage on Grady avenue would extend the rear line of lot 1 to some 78 feet, and thereby change the entire condition of block "J" as indicated by the map, in that the rear line of lot 1 being extended 78 feet instead of being wholly parallel with Watts avenue, as indicated by the map, a portion of it would be parallel with Grady avenue and not Watts avenue, and lot 2, instead of having five sides as indicated by the map, would only have four.

It fully appears that Mrs. Cumby was, at the institution of this suit in possession of every foot of land that she had purchased. Her whole case seems to turn upon the fact that the copy of the map of the Park Avenue Addition of record in Campbell county fails to give the length of the rear line as 67 feet, while every other copy of that map and all the maps of the addition other than that place that line at that length. If the contention of defendant in error were to be established it would not only be wholly contradictory of the maps, extend her rear line from 67 to 78 feet, and change the configuration of lot 1 from a pentagon to a parallelogram, but would result, if the same process of reasoning and proof were pursued with respect to the other lots, in disturbing the boundary line of every lot in block "J," for it is certain that lot 4 is entitled to 25 feet frontage on Grady avenue, which it should upon like principles, if this judgment were sustained,

recover from the owner of lot 5, and so on with each successive lot owner to the point of intersection of Cleveland and Grady avenues.

We are of opinion that the evidence wholly fails to sustain the verdict; that the judgment should be reversed, and the cause remanded for a new trial to be had in accordance with the views herein expressed.

*Reversed.*